UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE IRON WORKERS MID-SOUTH PENSION FUND, IRON WORKERS WELFARE FUND, AND MID-SOUTH IRON WORKERS DIRECT CONTRIBUTION FUND | CIVIL ACTION |
| VERSUS | NO. 05-6335 |
| COWBOY STEEL COMPANY, COWBOY CONTRACTING COMPANY, BIS ERECTORS, INC., F/K/A COWBOY ERECTORS, INC., COWBOY HOLDINGS, INC., EAKIN & COMPANY LIMITED, AND SAMUEL EAKIN | SECTION "T"(2) |

**ORDER AND REASONS**

Before the Court is a Motion for Summary Judgment filed by Eakin & Company, Limited and Samuel Eakin. Rec. Doc. 37. Plaintiffs filed an Opposition and a Supplemental Opposition. Rec. Docs. 45, 54. The matter came for hearing without oral argument on August 1, 2007, and was submitted on the briefs. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

**I.    BACKGROUND**

Plaintiffs are the trustees of three employee benefit plans. Rec. Doc.1 at paragraph 3. Defendants are Cowboy Steel Company, BIS Erectors, Inc., Cowboy Holdings, Inc., Eakin and Company Limited, and Samuel Eakin. Cowboy Steel Company entered into a collective bargaining agreement which bound it to pay monthly contributions to each of the three funds, namely: the Iron Workers Mind-South Pension Fund (hereinafter, "Pension Fund"), the Iron Workers Welfare Fund (hereinafter, "Welfare Fund"), and the Mid-South Iron Workers Direct Contribution Fund (hereinafter, "Annuity Fund"). Rec. Doc. 45. Cowboy Steel Company allegedly failed to contribute to the funds beginning in October 2003 and continuing through November 2004. Rec. Doc. 1 at paragraph. 12. Additionally, Cowboy Steel Company allegedly failed to pay late fees and interest

on the delinquent contributions. Rec. Doc. 1 at p. 12.

Plaintiffs allege that Cowboy Steel Company entered into an agreement with the Plaintiff funds on January 17, 2005, to pay out the delinquent amounts. Rec. Doc. 37 at p. 2. and Rec. Doc. 45 at p. 2. Pursuant to the agreement, Cowboy Steel Company was to make monthly payments of $5407.99. Rec. Doc. 45 at p. 2. Cowboy Contracting Company and BIS Erectors, Inc., also entered into agreements with the Plaintiff funds assuming all responsibility for the obligations owed by Cowboy Steel Company in the January 17, 2005, agreement and agreed to make payments under a payout plan should Cowboy Steel Company fail to do so. Rec. Doc. 1 at paragraphs 16-22 and Rec. Doc. 37 at pp. 2-3.

Beginning in July 2005, Cowboy Steel Company did not make the payments mandated by the January 17, 2005, agreement. Rec. Doc.1 at paragraphs 14. Plaintiffs allege that only four payments were made prior to June 2005, and that after that time, no payments were made by Cowboy Steel Company. Further, Plaintiffs allege that Cowboy Contracting and BIS Erectors, Inc., failed to make the payments for the delinquent contributions as required by the guarantee agreement. Rec. Doc. 45 at p. 3.

This action ensued seeking collection of the delinquent contributions owed under sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA") as amended by 29 U.S.C §§ 1109, 1132 and 1145, section 301 of the Labor Relations Act, 29 U.S.C § 185 and Louisiana law. It is alleged that Cowboy Holdings is the "alter ego" and parent of Cowboy Steel, Cowboy Contracting, BIS Erectors and Cowboy Erectors and as such is liable for all these companies' debts. Rec. Doc. 1 at paragraph 27. It is further alleged that Eakin & Co. Limited (hereinafter, "Eakin & Co.") is the "alter ego" and "successor" of the Cowboy Holdings and

2

therefore, liable for the Cowboy Companies' debts. Rec. Doc. 1 at paragraph 28. Samuel F. Eakin (hereinafter, "Eakin") is alleged to be one of the parties responsible for the creation of the alter egos and allegedly caused their formation with the intent to avoid liabilities due and owing to Cowboy Steel. Rec. Doc. 1 at paragraph 29. Additionally, the Defendants are alleged to have held, or exercised, discretion and control over the funds which are due and owing to Plaintiffs as contributions and which funds are alleged to be "plan assets" under ERISA. Rec. Doc. 1 at paragraphs 6-10, 29. Finally, the Complaint alleges that the Plaintiff funds are entitled to enforcement of the pay out contract under Louisiana state contract law. Under the terms of the agreement, Plaintiffs alleged that they are due the balance of the principal sum and penalties as well as interest. Rec. Doc. 1 at paragraph 31.

This Motion is filed on behalf of Eakin and Eakin & Co., requesting summary judgment because: (1) the alleged alter ego and successor liability theories are state law theories which are preempted by ERISA and cannot be brought against these defendants; and (2) there is not any fiduciary liability claim because the unpaid employer contributions are not "plan assets" and therefore, Defendants cannot be held liable for any fiduciary duty breach relating to the management or disposition of any plan assets. *See* Rec. Doc. 37.

Plaintiffs' Opposition counters: (1) that the unpaid contributions are "plan assets" because the Trust Agreements clearly and unambiguously define fund assets to include "owed contributions" like those at issue here; (2) alternatively, and in the event that the language of the Trust Agreement is not clear that the unpaid contributions are "plan assets" then summary judgment should be denied because issues of fact remain regarding Eakin and Eakin & Co.'s status as fiduciaries; and (3) the alter ego theories are asserted pursuant to federal law and ERISA, not state law, and therefore, the

alter ego and/or successor liability claims should not be dismissed. *See* Rec. Doc. 45.

**II.    LAW AND ANALYSIS**

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(C). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.,* 76 F.3d 651, 655-56 (5th Cir. 1996) *citing, Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir. 1995). Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.* at 588.

  *A.    State Law Claims.*

The Complaint states that the Plaintiffs are entitled to enforcement of the contract agreement between itself and Cowboy Steel, BIS Erectors f/k/a Cowboy Erection, Cowboy Contracting and Cowboy Holdings and Eakin and Company as alter ego's of Cowboy Steel under Louisiana State contract law. Rec. Doc. 1 at paragraph 31. Further, the Complaint alleges that Eakin and Eakin and Company are the alter egos of all the Cowboy Companies and are liable. Rec. Doc. 1 at paragraphs

4

28 and 29.  Eakin and Eakin and Company move for summary judgment on these allegations because the alter ego and successor liability theories are preempted by ERISA as they "attempt to provide an enforcement mechanism not provided by ERISA."  Rec. Doc 37 at p. 5.  These Defendants argue that because they did not sign the collective bargaining agreement obligating the Cowboy Companies to make the contributions, an enforcement action under ERISA does not lie against them.  Further, these Defendants assert that the alter ego and successor liability theories alleged attempt to hold Eakin and Eakin and Company liable for the failure of the Cowboy Companies to pay; however, such a supplemental enforcement mechanism, created by state law, is not provided by ERISA and therefore, is preempted.

In their Opposition Memorandum, Plaintiffs concede that their state law breach of contract claims are preempted by ERISA and therefore, they agree to voluntarily withdraw those claims.  Rec. Doc. 45 at p. 12.  Regarding the alter ego theories, they assert that those theories of liability are based upon federal law under ERISA and therefore, such claims under ERISA should not be dismissed on summary judgment as they have demonstrated sufficient facts concerning the corporation's alter ego status under ERISA.  Rec. Doc. 45 at p. 13.

Based upon Plaintiffs concession that any state law breach of contract claim is preempted, the Court grants summary judgment on this issue and all state law breach of contract claims are dismissed with prejudice.  However, Plaintiffs' Complaint alleges that Eakin and Eakin and Company can be forced to pay the contributions and therefore, Plaintiffs can maintain an ERISA enforcement action against them because they are the alter ego and/or successor of the Cowboy Companies.

This Court has previously recognized that an individual may be held personally liable under the ERISA enforcement provisions if the individual is proven to be the alter ego and/or successor of the signatory of the collective bargaining agreement. *Iron Workers Local 58 v. Citizens Bank*, 2002 WL 31427329 (E.D. La. 2002)(Porteous, J). Further, in *Galgay v. Gangloff*, 677 F. Supp. 295, 298-99 (M.D. Penn. 1987), summary judgment was denied as to the claims against the individual corporate officer and that court recognized an exception to the rule against personal liability under ERISA for delinquent corporation contributions to an employee retirement fund arises in situations where the alter ego doctrine applies. Because the plaintiffs alleged and pled sufficient facts demonstrating that defendant individually was the alter ego of other defendants, the court found that the individual defendant could be held personally liable under a single employer theory for the delinquent contributions should plaintiffs prove he was the alter ego of one or more of the defendant corporations which allegedly are signatories of the collective bargaining agreement. *Galgay*, 677 F. Supp. 298.

In light of the foregoing, Plaintiffs has adequately pled that Eakin and Eakin and Company could be liable to the funds for the delinquent contributions in the event they are found to be the alter ego of the Cowboy Companies. The facts as to whether Eakin and Eakin and Company are the alter ego and/or successor are heavily disputed. Thus, summary judgment on the alter ego issue is not appropriate.

### B.    *Plan Assets.*

Defendants next argue that summary judgment should be granted because the contributions in question are not "plan assets." Rec. Doc. 37 at p. 7. 29 U.S.C.A. § 1002(21)(A) defines a plan fiduciary as not only persons specifically named as fiduciaries, but also those persons who may

exercise any "discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of [fund] assets." Defendants submit that since the unpaid employer contributions at issue are not "plan assets" then Plaintiffs' claims fail and therefore, any fiduciary responsibility claim should not be addressed. Rec. Doc. 37 at p. 7.

The dispute involves how this Court should define "plan asset" as ERISA does not provide any definition. Further, while the United States Fifth Circuit has found that unpaid *employee* contributions are "plan assets," it has not ruled on the precise issue before this Court, namely whether unpaid employer contributions are "plan assets." *See Bannistor v. Ullman,* 287 F. 3d 394 (5th Cir. 2002) discussed *infra*.

Defendants suggest the Court follow the line of cases holding, as a general rule, that unpaid employer contributions are not "plan assets" unless the agreement between the employer and the fund clearly and unambiguously declare otherwise.[1] Rec. Doc. 37 at pp. 7-9. Defendants submit the language in the respective agreements at issue do not contain specific and clear language declaring that unpaid contributions are "plan assets" and therefore, they cannot be held liable for breach of fiduciary duty relating to the management of disposition of any plan assets. Rec. Doc. 37 at p. 9.

Plaintiffs counter that if the Court follows the case law cited by Defendants, summary judgment should be denied because the language in the three agreements provides that all "monies

---

[1] In support, Defendants cite: *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection Inc*., 352 F. Supp. 2d 794, 804 (E.D. Mich. 2004); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 -1014 (11th Cir. 2003); *Galgay v. Gangloff* 677 F.Supp. 295, 301 (M.D. Pa. 1987); *Kalda v. Sioux Valley Physician Partners, Inc*., 394 F.Supp.2d 1107, 1112 -1113 (D.S.D. 2005); *Trustees of Nat. Elevator Industry Pension v. Lutyk* 140 F.Supp.2d 447, 455 -456 (E.D.Pa. 2001).

7

due ...as employer contributions" are part of the funds.  Plaintiffs argue this language is clear and specific that the amounts due as unpaid employer contributions shall be considered as part of the funds and therefore, are "plan assets" even under the cases cited by Defendants.  In the event the Court would find the language ambiguous, Plaintiffs suggest the Court adopt the cases holding that unpaid contributions are *per se* "plan assets."  In support Plaintiffs cite The Secretary of the Department of Labor's May 11, 2005 Opinion; the Tenth Circuit's decision in *In re: Luna*, 406 F. 3d 1192, 1198 (10th Cir. 2005); and the Second Circuit's decision *U.S. v. LaBarbara*, 129 F. 3d 81 (2nd Cir. 1997).  Rec. Doc. 45 at pp. 7-9.  Plaintiffs also point out that the U.S. Fifth Circuit in *Bannistor,* held that unpaid employee contribution are "plan assets."  Plaintiffs urge this case shows that the Fifth Circuit gives the term "plan assets" a broad definition and therefore, the case law cited by Defendants giving it a narrow definition should be rejected.  Rec. Doc. 45 at p. 11.

     Defendants' reply counters that the language relied upon by the Plaintiffs was incorporated into the various plans by amendment and were not part of the original plans.  Rec. Doc. 52 at p. 3.  Thus, because there is not any evidence indicating that these changes were accepted by any of the Defendant employers or the non-employer Defendants or intended to create a beneficial interest upon the Plaintiffs, they argue that the amendments and hence the new language, are not binding upon them.  Rec. Doc. 52 at p. 3, 5.  Alternatively, Defendants urge that if the new language is binding, it applies to post-January 8, 2004, unpaid contributions and therefore, any claim for unpaid contributions prior to that time should be dismissed.  Rec. Doc. 52 at p. 5.  Finally, Defendant urges that the Fifth Circuit's *Bannistor* decision is inapplicable because it applies to employee as opposed to employer contributions.  Rec. Doc. 52 at p. 6.

     Plaintiffs' supplemental memorandum points out that the changes to the Trust Agreements

clarified, as opposed to changed, the definition of the what constitutes assets of the fund. Additionally, Plaintiffs provide that the Cowboy Companies acknowledged the debt owed to the Plaintiffs and agreed to adopt the funds' trust agreement and the appointment of the employer trustees.  Further, at the time the settlement agreement was entered into by Eakin and the Plaintiffs for payment, the current definitions were in place. Rec. Doc. 54 at pp. 1-2.  As for Defendants' argument that they are not bound by the changes, Plaintiffs assert that the respective collective bargaining agreements provide that the employer agrees to be bound by the agreements, bound to the declaration of trust establishing the funds and bound by any amendments to such agreement as well as accepted that the trustees are representatives of Cowboy Steel (i.e. the employer). Rec. Doc. 54 at p. 2.  Accordingly, Plaintiffs ague the intent of the trustees as opposed to the Defendants is determinative of whether there was a beneficial interest in unpaid contributions.

While there is not Fifth Circuit case law on the exact issue presented here, the Fifth Circuit did review the issue of whether employee contributions are "plan assets" for purposes of ERISA and held they were.  In *Bannistor v. Ullman*, 287 F. 3d 394, 402  (5th Cir. 2002), the plaintiffs were employees of Charter Graphics Services, Inc., ("Charter").  Charter offered its employees a 401(k) plan and a self-insured, health benefits plan.  When a payroll period ended, a payroll administrator supplied Charter with a report of the employees' 401(k) and health-plan contributions. After the 401(k) plan contributions were vouchered through Charter's accounts payable system, the amounts were forwarded to the 401(k) plan trustee for contribution to each employee's plan.  Because the health plan was self-insured, Charter paid health claims as an expense through a third-party administrator.  The employee contributions were not separately deposited in a trust account, but were treated as accounting offsets against the health claims that Debtor had already paid.

Charter became insolvent by December 1995 and the creditors began to call in the debts. Because of Charter's insolvency, the employees 401(k) and health-plan contributions made in November and December 1995 were not forwarded or applied to the plans. Charter ultimately shut down operations on January 4, 1996, without forwarding approximately $30,000 in 401(k) contributions to the plan and without paying $176,000 in health claims made pursuant to the health plan. Debtor filed for bankruptcy under Chapter 11 of the Bankruptcy Code. *Bannistor,* 287 F. 3d at 397-398.

Employees filed suit pursuant to ERISA §§ 404(a)(1) and 405(a)(1), 29 U.S.C. §§ 1104(a)(1) & 1132(a),[2] alleging, *inter alia*, that Charter and other defendants violated ERISA by breaching their fiduciary duties in relation to plan assets. The bankruptcy court imposed liability on defendants finding that they breached their fiduciary duty to the employees and the district court affirmed. *Bannistor,* 287 F. 3d at 398. On appeal, one of the issues raised was whether any fiduciary duty arose because the assets at issue were not "plan assets." In rejecting that argument, the Fifth Circuit stated:

> "...[W]e agree with the bankruptcy court that the BT Appellants ultimately exercised authority or control respecting management or disposition of plan assets to make them fiduciaries. ERISA does not define "plan assets" but the Secretary of Labor defines it to include amounts "that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102 (2000). Other courts have similarly defined the term to "include employee contributions to benefit plans which are withheld from employees' paychecks and for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan." *United States v.*

---

[2]The action was originally filed in the district court, but was referred to the bankruptcy court under 28 U.S.C. § 157(a), because it related to Charter's bankruptcy action. *Bannistor,* 287 F. 3d at 398.

10

>*Grizzle*, 933 F.2d 943, 946 (11th Cir.), cert. denied, 502 U.S. 897, 112 S.Ct. 271, 116 L.Ed.2d 223 (1991); *L.W. Cochran v. Coleman* (In re Coleman), 231 B.R. 393, 395 (S.D.Ga.1999); *In re College Bound, Inc.*, 172 B.R. 399, 403 (S.D.Fla.1994); *Prof'l Helicopter Pilots Ass'n v. Denison*, 804 F.Supp. 1447, 1453 (M.D.Ala.1992)*; Pension Benefit Guar. Corp. v. Solmsen*, 671 F.Supp. 938 (E.D.N.Y.1987).

Although the Fifth Circuit's decision deals with employee contributions, the Court does not find any reason, nor has Defendants cited any compelling reason, for this Court not to follow Fifth Circuit's analysis in the situation where an employer contribution was at issue.  As such, this Court may rely on upon any applicable Code of Federal Regulations' definition and/or opinion from the Secretary of Labor in determining whether a "plan asset" includes the employer contributions at issue.  Neither party has cited to this Court any regulation specifically defining employer contributions as a "plan asset;" nevertheless, Plaintiffs have provided a May 11, 2005, Secretary of Labor opinion which discusses whether distributions are "plan assets" and therefore, covered by ERISA.

The opinion was requested on behalf of Blue Cross and Blue Shield of Minnesota ("Blue Cross') and looks at whether proceeds received by Blue Cross in a tobacco settlement and distributed to Blue Cross policy holders are "plan assets" protected by ERISA.  The Secretary of Labor's office initially pointed out that ERISA does not expressly define what property will be regarded as "assets of an employee benefit plan" and that the regulations issued by the Department of Labor while defining "plan asset" with respect to plan investments and participant contributions, has remained silent as to whether other distributions or contributions are "plan assets."  *See* 29 C.F.R. § 2510.3-101 and 29 C.F.R. § 2510.102.  In the absence of a controlling definition, the Secretary of Labor takes the position that the "assets of an employee benefit plan generally are

11

identified...on the basis of ordinary notions of property rights." *See* Secretary of Labor's May 11, 2005, Opinion at Exhibit "8" attached to Rec. Doc. 45.  "[A] distribution...will be a plan asset if a plan has a beneficial interest in the distribution under the ordinary notions of property rights.  Under this approach, the primary factors in determining beneficial interest would be the types of benefits, the terms of the governing instruments and the source of funds for the insurance contract." *See* Secretary of Labor's May 11, 2005, Opinion at Exhibit "8" attached to Rec. Doc. 45.  "If the insurance policy or contract, together with other instruments governing the plan, is fairly read to provide for ownership of distributions, such as the Payment, then that language governs subject to the provisions of section 403 of ERISA." *See* Secretary of Labor's May 11, 2005, Opinion at Exhibit "8" attached to Rec. Doc. 45.

While the parties argue over the proper standard for determining whether or not the unpaid contributions are or are not "plan assets," the Court finds that under either approach the terms of the governing instruments must be reviewed in determining whether the contribution at issue is a "plan asset."  The pertinent part of the three governing documents are discussed hereafter.

The definition of the "Welfare Trust Fund," amended January 2004, provides :

> Section 1.7 Trust Fund
>
> The terms "Welfare Trust Fund," "Trust Fund," "Welfare Fund," and "Fund" as used herein shall mean the entire trust estate of the Iron Workers Welfare Plan, which consists of but is not limited to, all policies together with all dividends, refunds or other sums, payable to the Trustees on account of such policies, all investments made and held by the Trustees, **all monies due to or received by the Trustees as employer contributions** or as income from investments held by the Trustees as herein above provided or otherwise, and any other property received or held by, or owed to the Trustees for the uses, purposes, and Trusts set forth on this Agreement and Declaration of Trust.

*See* Exhibit 5, Amendment 5, p. 2 attached to Rec. Doc. 45 (Emphasis added).  The preamble to this amendment provides that "the Board of Trustees of the Iron Workers Welfare Fund desires to amend the Restated Agreement and Declaration of Trust governing the Iron Workers Welfare Fund in order to clarify when contributions become assets of the Welfare Fund."  *See* Exhibit 5 at Amendment Number 5, p. 1.  Further, the employers intention to accept this amendment is made through their representatives as evidenced on the last page of the Amendment providing:  "EMPLOYERS IN THE IRON WORKING INDUSTRY REPRESENTED BY THE LOCALS TO THE RIGHT WITH WHOM THEY HAVE EXECUTED COLLECTIVE BARGAINING AGREEMENTS."  *See* Exhibit 5 at Amendment Number 5, p. 4.

> The definition of Pension Trust Fund, amended 2002, provides :
>
>> Section 1.7. The terms "Pension Trust Fund," "Trust Fund, " "Pension Fund," and "Fund," as used herein shall mean the entire trust estate of the Iron Workers Mid-South Pension Plan which consists of, but is not limited to, all policies together with all dividends, refunds or other sums payable to the Trustees on account of such policies, all investments made and held by the Trustees, **all monies due to or received by the Trustees as Employer Contributions** or as income from investments held by the Trustees as hereinabove provided or otherwise, and any other property received and held by, or owed to the Trustees for the uses, purposes and trusts set forth in this Agreement and Declaration of Trust.

*See* Exhibit "6" at Amendment Number No. 11 attached to Rec. Doc. 45.  The Fund's documents were amended "in order to clarify when contributions became assets of the Pension Trust Fund." *See* Exhibit "6" attached to Rec. Doc. 45 Restated Agreement and Declaration of Trust for the Iron Workers Mid-South Pension Fund at Amendment 11.  This Amendment also provides the same language as in the Welfare Trust documents evidencing the Employers' intent.  *See* Exhibit "6" attached to Rec. Doc. 45, Amendment 11 at p. 2.

The Mid-South Iron Workers Direct Contribution Agreement, amended in January 2004, defines Trust fund as follows:

> Section 1.7. The terms "Trust Fund," "Trust," and "Fund" as used herein shall mean the entire Trust estate of the Mid-South Iron Workers Direct Contribution Fund, which consists of, but is not limited to, all policies together with all dividends, refunds or other sums payable to the Trustees on account of such policies, all investments made and held by the Trustees, all **monies due to or received by the Trustees as employer contributions** or as income from investments held by the Trustees as hereinabove provided or otherwise, and any other property due to or received and held by the Trustees for the uses, purposes and trust set forth in this Agreement and Declaration of Trust.

*See* Exhibit "7"Amendment Number 2 at p. 2 attached to Rec. Doc. 54. (Emphasis added). This Amendment was signed by the on behalf of the Employers by the industry representatives with the same language of intent as in the other Amendments. *See* Exhibit "7"Amendment 2, p. 3 attached to Rec. Doc. 54.

The language in these agreements clearly provide that all monies due or received as Employer Contributions are part of the respective funds. Under either the beneficial interest/property rights test urged by the Plaintiffs or the strict language of the agreement test urged by Defendants, the Court finds that the unpaid employer contributions in this instance are "plan assets" and therefore, Defendants' Motion for Summary Judgment on this issue is **DENIED**. Defendants' arguments that the amendments are inapplicable because there were not accepted is foreclosed by the express paragraph above the signature line in each amendment provided that the agreements were being executed on behalf of the "Employers." Issues relating to whether or not these Defendants were or were not fiduciaries has not been briefed and the Court makes no opinion as it relates to the Defendants' status as fiduciaries. The Court holds only that summary judgment

on the issue of whether the unpaid contributions at issue are considered "plans assets" as a matter of law is not warranted.

Accordingly and for the reasons stated herein,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. 37) is **DENIED IN PART AND GRANTED IN PART.** Summary Judgment is **GRANTED** as to any and all state law causes of action and all remaining relief is **DENIED.**

New Orleans, Louisiana, this 15th day of April, 2008.

```
_____
         G. THOMAS PORTEOUS, JR.
         UNITED STATES DISTRICT JUDGE
```